UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*       \*       \*       \*       \*

| | | |
|---|---|---|
| JASON/JENNA HANSEN, | ) | 4:19-cv-4019-KES |
| Plaintiff | ) | |
| v. | ) | VERIFIED |
| SAM BADURE, KEN VANMEVEREN, | ) | AMENDED |
| JUSTIN HAWK, CATHY WYNIA, | | |
| RICK LESLIE, TROY ELLIS, | ) | COMPLAINT |
| DEREK EKEREN, DARIN YOUNG, | | |
| DEB EILERS, NANCY CHRISTENSEN, | ) | |
| ROBERT DOOLEY, BRENT FLUKE, | | |
| DENNIS KAEMINGK, MIKE LEIDHOLT, | ) | |
| HEATHER BOWERS, CORY NELSON, | | |
| CHRIS TURBAK, KAYLEN THELEN, | ) | |
| JENNY ENGLAND, and TIFFANY | | |
| WOLFGANG, in their official and | ) | |
| individual capacities, | | |
| | ) | |
| Defendants | ) | |

\*       \*       \*       \*       \*

## PRELIMINARY STATEMENT

This is an action brought by Jason/Jenna Hansen, a trans-
gender prisoner who had been confined in the Jameson Prison Annex
(JPA), the South Dakota State Penitentiary (SDSP), and the Mike
Durfee State Penitentiary (MDSP) in Sioux Falls and Springfield,
South Dakota (SD) pursuant to 42 U.S.C. §1983 alleging Defendants:
(1) refused and continue to refuse to appropriately identify and
treat Plaintiff's properly diagnosed gender identity disorder (GID)/
gender dysphoria; and (2) punished and continue to threaten to punish
Plaintiff using an ambiguous and too vague Prohibited Act which was
unconstitutional on its face and as applied, both of which claims
violated and continue to threaten to violate Plaintiff's rights to
freedom of expression, to be free from cruel and unusual punishment

and to due process and equal protection of the laws as guaranteed by the First, Eighth, and

Fourteenth Amendments to the Constitution of the United States.


## JURISDICTION and VENUE


1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, §1343(a), and 42 U.S.C.

§1983.


2.      Venue is properly before this Court pursuant to 28 U.S.C. §1391.


## PARTIES


3.      During the pendency of this action, Plaintiff Jason/Jenna Hansen was a prisoner confined

within the Jameson Prison Annex (JPA) and the South Dakota State Penitentiary (SDSP) in Sioux

Falls, and the Mike Durfee State Penitentiary (MDSP) in Springfield, South Dakota (SD).


4.      Defendants, with noted exceptions, acted or failed to act in Sioux Falls, Springfield, or

Pierre, SD, as noted, under color of law, in their official and individual capacities.


5.      SAM BADURE was a Unit Manager (UM), the PREA Compliance Manager, and member of

the "Gender Non-Conforming Committee" (GNC) (quoted from DOC Policy 1.3.E.5 PREA ...).

6. KEN VANMEVEREN was the PREA Coordinator at SDSP and JPA, and member of the GNC.

7. JUSTIN HAWK was a SD Department of Corrections (DOC) Lieutenant (Lt.), a PREA Investigator, and a Security (SIU) Representative (Rep.) on the GNC.

8. CATHY WYNIA was a DOC Lt., a PREA Investigator, and SIU Rep. on the GNC.

9. RICK LESLIE was the Director of Classification and member of the GNC.

10. TROY ELLIS was the UM for the North/South Unit at SDSP and member of the GNC.

11. DEREK EKEREN was the Unit Coordinator (UC) for the South Unit of SDSP.

12. DARIN YOUNG was the Warden of SDSP/JPA, DOC Director of Operations, and member of the GNC.

13. DEB EILERS was a UC at MDSP.

14. NANCY CHRISTENSEN was a UM at MDSP and member of the GNC at MDSP.

15.    ROBERT DOOLEY was Warden of MDSP, DOC Director of Operations, and Member of the GNC at MDSP.  He has retired.

16.    BRENT FLUKE  was Warden of MDSP and member of the GNC at MDSP.  He succeeded Mr. Dooley, above.

17.    DENNIS "Denny" KAEMINGK was the DOC Secretary.  He has retired.

18.    MIKE LEIDHOLD was the DOC Secretary.  He succeeded Mr. Kaemingk, above.

19.    HEATHER BOWERS was a SD Department of Health (DOH) Correctional Health Services (CHS) Clinical Supervisor, and the Health Services (HS) Rep. on the GNC at SDSP.

20.    CORY NELSON, MS, LPC, CAC, QMHP was a Clinical Supervisor for Correctional Behavioral Health, SD Department of Social Services, Division of Behavioral Health (BH) at MDSP, and a member of the GNC at MDSP.

21.    CHRIS TURBAK was BH clinician at SDSP and member of the GNC.

22.    KAYLA THELEN was a BH supervisor and BH Rep. on the GNC.

4

23.     JENNY ENGLAND was a BH supervisor at SDSP and member of the GNC.


24.     TIFFANY WOLFGANG was  the Administrator for DOC BH and member of the GNC.


## FACTS


25.     SDSP, JPA, and MDSP are all SD Department of Corrections (DOC) facilities.  *I.e.*, they all

must adhere to DOC policies and other directives endorsed or otherwise approved by the DOC

Secretary, Mike Leidholt and his predecessor Dennis "Denny" Kaemingk.


26.     Plaintiff was born on May 12, 1979 as a male and named Jason Hansen.  However, since

early childhood, she has believed she is a female, named Jenna, confined in a man's body.


27.     Jason/Jenna Hansen was for the first time incarcerated in JPA on February 6, 1998,

having been lawfully sentenced to serve 70 years.  Ms. Hansen has no prior criminal convictions

and no prior experience in any court.


28.      Ms. Hansen has suffered from symptoms of Gender Identity Disorder (GID) or Gender

Dysphoria since she can remember, which she believes was caused or resulted from her being

sexually abused since early childhood.  She was forcibly raped as an adolescent by a friend's

uncle and more recently by her boss at Frontier Motors in Rapid City in 1996.

29.     Currently, Ms. Hansen suffers vivid recurring dreams of the humiliation and trauma of her childhood and the anxiety of her future.  Her sleep is disturbed by even the slightest noises, *e.g.*, a Correctional Officer (CO) tapping his recording instrument against the metal buttons mounted on the cell walls during their bi-hourly rounds 24/7.  She is also apprehensious when in crowds or when approached by strangers.

30.     In the past, Ms. Hansen attempted to diminish her anxieties by binging on comfort foods, but gained uncomfortable and unhealthy weight.  She continues to experience the compulsion, but overcomes the cravings with logic and self-control.

31.     Throughout her recollection, Ms. Hansen has used "cover-ups", female impersonations, attempting to be perceived as a female.

32.     Apparently (pursuant to the letterhead whereon is written a report dated September 1, 2017 by Cory Nelson, ...), the South Dakota Department of Social Services (DSS), Division of Behavioral Health, Correctional Behavioral Health (BH)) provides mental health services at all DOC facilities.

33.     The Prison Rape Elimination Act (PREA) Standards (34 U.S.C. §30307) are enforced at DOC facilities by DOC Policy 1.3.E.5 PREA Compliance with Prison Rape Elimination Act Standards, effective 12/05/2018.  Exhibit (Ex.) 1.

34.     DOC Policy 1.3.E.5 PREA ... creates a "Gender Non-Conforming Committee" (GNC) whose members decide whether an inmate is to be defined as gender nonconforming and how s/he is to be treated.  Ex. 1 DOC Policy 1.3.E.5 PREA ..., §IV.7.C, pp. 12-14.

35.     Pursuant to DOC Policy 1.3.E.5 PREA ..., members of the GNC are the: PREA Compliance Manager, Sam Badure; Director of Classification, Rick Leslie; Warden, Robert Dooley / Brent Fluke and Darin Young; PREA Coordinator, Ken VanMeveren; Behavioral Health, Cory Nelson, Chris Turbak, Kayla Thelen, Jenny England, and/or Tiffany Wolfgang; Health Services, Heather Bowers; Facility PREA Investigator, Justin Hawk or Cathy Wynia; Unit Manager, Nancy Christensen and Troy Ellis; and Security, Justin Hawk or Cathy Wynia.  Ex. 2, p. 2.

36.     *DOC Policy 1.3.E.5 PREA ... requires the GNC to convene when a transgender inmate is identified or when she "has submitted a request concerning any issue which the [GNC] has authority to take action on" (id.§IV.7.C.1, p. 12),* which include: medical screening, analysis of behavioral health, refer to a consultant, separate showers (including in SHU [Special Housing Unit, Disciplinary Segregation, "the Hole"]), separate searches, and other requested issues/ complaints (*id.*, C.2, p. 13).  The review, above, "will be accomplished within 30 days following the request being received by the Compliance Manager or unit staff" (*id.*, C.3, p. 13), and a complete response will be documented in "COMS" (the DOC computer system) (*id.*, C.4, p. 14).

37.    The Warden of each DOC facility is required to consult with the appropriate PREA

Coordinator to ensure compliance with DOC Policy 1.3.E.5 PREA ... (*e.g.,* §IV.7).  *Id.*§IV.2.E.

38.    The PREA Compliance Manager, Sam Badure, is responsible for providing ways for

inmates to report "staff neglect or violations of staff responsibilities pertaining to PREA"

standards as delineated in DOC Policy 1.3.E.5 PREA....

39.    Since 2000 Ms. Hansen has requested the relief she seeks by this action from her unit

staff and BH staff at MDSP and SDSP orally, by kites, and finally utilizing the DOC promulgated

grievance process.

40.    While in JPA in 2009, Ms. Hansen attempted to hang herself by the neck from the upper

tier (floor) railing using a bed sheet because she felt as though she could not be herself, a

woman, and therefore wanted to give up, to quit living as a male.

41.    In 2014, and again in 2016, while confined in MDSP, Ms. Hansen attempted self-

castration to remove what she believed was the source of her offensive testosterone, which she

believed was causing her male pattern baldness, *inter alia.*

42.     On December 27, 2015, Ms. Hansen was written-up, received a Disciplinary Report (DR), for having makeup, light brown lip gloss in the locker of her cell in SDSP.  Ex. 2.  Consequently, she was confined in SHU (Special Housing Unit, Disciplinary Segregation, aka "the Hole") for three days.

43.     Cory Nelson, MS, LPC, CAC, QMHP, Clinical Supervisor, Correctional Behavioral Health, South Dakota Department of Social Services, Division of Behavioral Health, on September 1, 2017 issued a report, copied to: "Department of Social Services (DSS), Asst. Director Correctional Behavioral Health; DSS Behavioral Health Division Director; Warden [of MDSP]; and Associate Warden (AW) [of MDSP]", wherein Mr. Nelson diagnosed Ms. Hansen with "Gender Dysphoria" and further stated that Ms. Hansen "has a marked incongruence between his expressed and assigned gender" and that Ms. Hansen also met other criteria defining her gender identity disorder (GID).  Mr. Nelson also wrote that Ms. Hansen sought appropriate approvals to: "wear makeup, have hormones, and ... talk to someone regarding gender reassignment surgery" (*id.*).  Ex. 3.

44.     DOC Policy 1.3.E.2 Administrative Remedy for Inmates provides specific rules and procedures to be followed to exhaust administrative remedies at DOC facilities.  Generally, the grievance process begins with the submission of an Informal Resolution Request (IR) for a response (IRR) by unit staff, usually the Unit Coordinator (UC).  Thereafter, an inmate may submit a Request For Administrative Remedy (AR) to the Administrative Remedy Coordinator

(ARC) who may unilaterally reject the complaint for a variety of subjective reasons or forward the form (AR) with the IR and IRR enclosed to a senior staff official to prepare an Administrative Remedy Response (ARR) to be endorsed by the warden of the facility or his/her designate. Only major disciplinary findings, classification, good-time, discharge date, sexual abuse, or harassment complaints, or an ADA grievance may be appealed to the DOC Secretary for his appeal review.

45.      After repeated requests to be allowed to wear makeup, orally and by kites (informal forms used by inmates to communicate with staff) to her unit staff, including Defendants Eilers and Christensen, and to Mr. Nelson of the MDSP BH staff, Ms. Hansen submitted her IR requesting to be allowed to buy/use makeup on August 21, 2017, which caused a response by Deb Eilers. An AR was submitted on August 24, and an ARR by Nancy Christensen was endorsed by Warden Dooley on September 21, stating there was no BH order allowing makeup for Ms. Hansen. Ex. 4 a-d.

46.      Ms. Hansen received a DR dated October 29, 2017, alleging she violated DOC Prohibited Act V-16 "Conduct which disrupts or interferes with the security or good order of the institution; interfering with a staff member in the performance of his/her duties" by "wearing blue eye shadow or eyeliner during formal count," which was alleged by CO Kelly Tjeerdsma on October 30. UC Deb Eilers found Ms. Hansen had committed the prohibited act on October 31, 2017 and fined Ms. Hansen $3.00 therefor. Ex. 5 a & b.

47.     CO  Kelly Tjeerdsma issued another DR on January 17, 2018, using the same overly broad

and inapplicable rule, V-16, to allege Ms. Hansen had committed the prohibited act by having

come "to med pass with his eyebrows colored in darker." She additionally alleged, "this inmate

has been told repeatedly to stop doing this." Ex. 6. At the Unit Disciplinary Committee hearing

(UDC) on January 19, 2018, UC Eilers sanctioned Ms. Hansen $3.00.


48.     Low Level Violation V-16 is unconstitutional on its face and as applied (see above)

because it is so vague that Plaintiff cannot possibly know, by reading the rule, what behavior is

forbidden or a violation of institutional/DOC rules.


49.     UM Nancy Christensen noted Ms. Hansen's AR dated March 20, 2018, requesting to be

provided a sports bra, as having been received on "3-21-18 NC". Ex. 7 a & b. There was no

response to the AR.


50.     Nancy Christensen noted the receipt of Ms. Hansen's March 30, 2018 AR, requesting

testosterone blockers, on April 3. Ex. 8. There was no response to the AR.


51.     Deb Eilers was informed of Ms. Hansen's request for a sports bra of May 10, 2018, and

Nancy Christensen received the AR #24322 on May 22. Ex. 9 a-c. There was no response.

52.     Deb Eilers responded to Ms. Hansen's IR #24320 of May 10, 2018, requesting boxer

briefs to restrict her "ghost limb" on May 18, and Nancy Christensen noticed her receipt of the

AR on May 22.  Ex. 10 a-c.  There was no response.


53.     Deb Eilers responded to Ms. Hansen's IR #24321, requesting estrogen pills, on May 18,

2018, and Nancy Christensen received the AR on May 22.  Ex. 11 a & b.  There was no response.


54.     The IR submitted by Ms. Hansen on August 19, 2018, requesting a sports bra, was

rejected by Deb Eilers on August 21 and the AR, received by Nancy Christensen on August 22,

was rejected on September 20, 2018.  Ex. 12 a-d.


55.     In October 2018, and previously, Ms. Hansen used a razor blade to cut herself on her

upper arms and thighs while in a state of deep depression believing she could somehow gain

some release by the cuttings.


56.     Ms. Hansen was evaluated on October 29 and 30, 2018 by Cynthia Osborne, MSW, MSE,

Psychotherapist and Assistant Professor in the Department of Psychiatry & Behavioral Sciences

at Johns Hopkins University School of Medicine, specializing in providing gender dysphoria

evaluations.  Ms. Osborne has been noted as an expert consultant in over 44 legal opinions

from the First, Third, Fourth, Seventh, and Ninth Circuit and district courts for over a decade.

Ms. Hansen was denied even a look at the report by Ms. Osborne for over five months, until this

amended complaint began to evolve, by BH workers including Chris Turbak, Kayla Tinker, and Jennie England.

57.     In February 2019 Ms. Hansen was confined in the SDSP SHU and there denied private showers, private searches, and the use of an electric razor, after having identified herself as transgender and therefore entitled because she would otherwise suffer psychological harm.

58.     Ms. Hansen's IR #27462, requesting permanent body hair removal of March 8, 2019 produced a response by UC Derek Ekeren on March 17.  Her AR of March 19 was rejected on April 1.  Ex. 13 a-d.

59.     Ms. Hansen submitted four IRs on March 13, 2019 to UC Ekeren: (1) #27463 requesting private searches while in SHU; (2) 27464 requesting meds for head hair regrowth (to treat her male pattern baldness); (3) #27465 requesting to use an electric razor while in SHU; and (4) #274666 requesting private showers while in SHU.  All four produced responses dated March 17, which were received by Ms. Hansen on March 18.  The ARs were rejected on Mach 22 because they did not include the IR & IRR required paperwork.  Therefore, the ARs were resubmitted, placed in the box outside of the office of UC Ekeren designated for those forms, on March 26 and noted as having been received on March 27.  All four were rejected again on April 1 because the ARC believed Ms. Hansen had exceeded the 10 day limit (inmates have 10 days from the date the IRR was signed to submit the AR).  However, requests for PREA issue investigations "are not subject to time limitations and may be submitted at any time."  DOC Policy 1.3.E.2 Administrative Remedy for Inmates, §IV.5.A, p. 7).  Exs. 14-18.

60.    In response to her query of April 1, 2019, Elizabeth Effling, Unit Case Manager (2nd in command of the unit) responded that Ms. Hansen would be reclassified on February 11, 2020, then transferred to MDSP. Ex. 19.

61.    CO Derrick Godby issued a DR on April 9, 2019, alleging Ms. Hansen had in her possession, within her cell, a "home made (sic) tank top [and] 3 pairs of home made (sic) underwear", *inter alia*. Ex. 20.

62.    Ms. Hansen met with Chris Turbak at the SDSP BH offices on or about April 18, 2019, to request authorization for her possession of the same items available to female prisoners from their commissary. In response, Turbak told Ms. Hansen there was no reference in Ms. Hansen's HS or BH records to the September 1, 2017 diagnosis of "Gender Dysphoria" nor to the October 29-30, 2018 examination and report of Cynthia Osborne, and that Ms. England had told him, Turbak, that Ms. Hansen could not have access to MH records.

63.    Ms. Hansen attended Sick Call on April 30, 2019 to request: (1) estrogen meds; (2) testosterone blockers meds; (3) sports bras; (4) boxer briefs; (5) makeup from [female] commissary; (6) "GNC shower" in SHU; (7) single strip searches; (8) body hair removal; (9) head hair regrowth hormones; (10) copies of her BH and HS medical files; and (11) a pillow. Ex. 21. A copy of the request list, above, Ex 21, was simultaneously provided to SDSP BH.

65.    Plaintiff believes she is often transferred because of her condition, her gender dysphoria. Initially, when she was first incarcerated (prior to PREA), she was placed in the West Unit of SDSP. In

mid-2001 she was transferred to JPA, a higher security prison, for six months, then back to West

until mid-2009 when she was transferred back to Jameson, and six months later, in 2010, to

West again.  In late 2012 Ms. Hansen was transferred to MDSP until 2015 when she was

transferred to East Hall at SDSP for six months, then back to MDSP in 2016.  On January 31,

2019, Ms. Hansen was transferred to Federal Hall in SDSP.  Ms. Hansen will be reclassified and

subsequently transferred back to MDSP after February 11, 2020.


65.     In late March 2019 UC Angela Steineke prevented Ms. Hansen from submitting

additional grievances regarding conditions counter transgender requirements in SHU in

February 2019, first saying she could not accept the grievances because she was not Ms.

Hansen's UC, and when Ms. Hansen explained the her UC, Mr. Ekeren was not available, UC

Steineke told Ms. Hansen, first that she didn't have time, and then that Ms. Hansen had

exceeded the 30 day limit from the dates of the offending incidents.


66.     In early April 2019 a notice was posted in SDSP cell halls that from April 21 through April

25 a PREA audit of SDSP would be conducted and if an inmate desired to meet with Diane Lee,

Certified PREA Auditor, during the audit they must write to her at her Rockville, MD Address.

Ms. Hansen sent to Ms. Lee a letter explaining her situation and outlined her complaints.  The

letter was posted by regular prison mail because UC Ekeren told Ms. Hansen the letter to Ms.

Lee was not legal mail.  Ms. Hansen also, prior to the audit, sent to SDSP PREA Coordinator

VanMeveren a kite informing him of her complaints and asking to be scheduled to meet with

the PREA Auditor during the announced audit.

67.     Ms. Hansen was called to the office of UM Sam Badure in West Hall on May 7, 2019 to

discuss the complaints (grievances) made by Ms. Hansen regarding Gender "Non-Conforming"

Committee (GNC) showers and strip searches experienced by Ms. Hansen in February 2019

while she was in SHU.  Ms. Hansen told Ms. Badure she was transgender and therefore should

not be required to strip or shower in view of other inmates, whereas her experiences while in

SHU in February 2019 were that she was both required to strip and shower in view of other

inmates while in SHU.  Ms. Badure said only, in an arrogant manner, that "they" were found to

be in compliance with PREA Standards during their [April 21-25, 2019] audit, and dismissed the

allegations of Ms. without investigation, *e.g.*, interviews with staff and inmates present at the

instances alleged by Ms. Hansen with her grievances.  The interview with Ms. Badure was

perfunctory.


68.     Because her letter to the PREA Auditor in early April, in response to the notice posted in

the cell halls, mailed in an unsealed envelope to be read by SDSP mail room personnel, as

required by DOC policy, or her kite to SDSP PREA Coordinator VanMeveren did not produce an

interview with the PREA Auditor during the April 21-25 audit, Ms. Hansen prepared and mailed

a printed letter to Diane Lee, Certified PREA Auditor, 11820 Parklawn Drive, Ste. 240, Rockville,

MD 20852 (the name and address posted in the cell halls in early April) via CERTIFIED MAIL

dated May 22, 2019.  Ex. 22.  Ms Hansen gave the letter and a slip to pay the fee to UC Ekeren

on May 22.

69.     By individually addressed letters dated May 29, 2019, Ms. Hansen noticed Defendants

Badure, VanMeveren, Hawk, Wynia, Leslie, Young, Kaemingk, Leidholt, Bowers, Nelson, Turbak,

Thelen, England and Wolfgang that she had repeatedly asked to be designated as having been

diagnosed with Gender Dysphoria, and because Defendants refused to make such a designation

on the record she had received disciplinary reports and had been sanctioned.  Ms. Hansen

asked each Defendant to have her condition noted upon the record so as to cause her

treatment therefor.  Ms. Hansen gave the individually addressed envelopes addressed to

Defendants to UC Ekeren on May 28, 2019.  Ex. 23.


70.     Chris Turbak at BH told Ms. Hansen on May 31, 2019 that his boss, Jenny England, told

him that Ms. Hansen could not have the address of Cynthia Osborne, nor see any part of her BH

file.


71.     Ms. Hansen was called to the office of AW Ponto on June 3, 2019 and there given the

envelope addressed to Warden Young and the enclosed letter dated May 29 (Ex. 23).  AW Ponto

asked what Ms Hansen wanted in response to the letter, to which Ms. Hansen reiterated the

relief sought in the Amended Complaint, to which AW Ponto replied that "they" had nothing to

do with the relief she sought, rather that was up to Ms. Wolfgang.


72.     On June 6, 2019, Ms. Hansen gave to UC Ekeren letters addressed to Defendants Ellis,

Ekeren, Eilers, Christensen, and Fluke, exact copies of the letters sent to the other Defendants

on May 29.  Ex. 23.

73.     Chris Turbak called for Ms. Hansen on June 7, 2019, and at the BH office showed to her a copy of the report by Cynthia Osborne.

74.     Ms. Hansen was again called to BH on June 12, 2019, in response to her kite asking to again see the report by Cynthia Osborne, and was told by Turbak that she could not copy nor make notes thereof.  Nonetheless, when Ms. Hansen was given an opportunity, she surreptitiously made notes of portions of the 28-pages report she believed persuasive to her cause, to wit:  the report was dated December 18, 2018 and occurred on October 29-30, 2018, and her conclusion was that Ms. Hansen was suffering from gender dysphoria, and Ms. Osborne recommended Ms. Hansen be allowed makeup, other feminine accommodations, feminine undergarments, hormone treatment, and hair removal.

75.     Also on June 12, 2019, Ms. Hansen received a letter from Jennie England, Asst. Director, Correctional Behavioral Health, SD Department of Social Services, Division of Behavioral Health, dated June 11, wherein she wrote "letters" (plural) dated May 29 to "Division of Behavioral Health" (Defendants Nelson, Turbak, Thelen, England, and Wolfgang) and the DOC Secretary (Defendants Kaemingk and Leidholt) "were received" and "[t]hrough the evaluation you participated in with the gender dysphoria consultant it was determined that you met clinical criteria for gender dysphoria." Ex. 24.

76.     In a response dated "6/14/19" to a request to have an appointment with an endocrin-

ologist, so as to be prescribed "hormome meds and testosterone blockers", a RN in SDSP HS

wrote that "your report has not been submitted yet" and therefore they could do nothing for

Ms. Hansen.  Ex. 25.

77.     Whereas DOC Policy 1.3.E.5 PREA ... required unit staff, Defendants Ellis, Ekeren, Eilers,

and Christensen, who were all aware of Ms. Hansen's kites and grievances requesting the relief

sought by this action, to notice GNC of Ms. Hansen's requests/complaints, none did so.

78.     Grievance responders, Defendants Eilers, Christensen, Dooley, Ekeren, and Ellis,

prevented Ms. Hansen from appearing before the GNC or having her requests/complaints heard

by the BH staff.

79.     GNC Members, Defendants Badure, VanMeveren, Hawk, Wynia, Leslie, Ellis, Young,

Christensen, Dooley/Fluke, Bowers, Nelson, Turbak, Thelen, England, and Wolfgang, by not

having heard and acted upon the requests/complaints of Ms. Hansen prevented her treatment,

including all the relief requested by this Amended Complaint.

80.     BH professionals, Defendants Nelson, Turbak, Thelen, England, and Wolfgang, by having

had direct contact with Ms. Hansen and/or here written requests/complaints, have prevented

her treatment and other relief requested by this action.

81.    Ms. Hansen has not been offered any of the treatment necessary as a remedy for her

disorder and has in fact been denied the assignation of being transgender and suffering from

gender dysphoria or gender identity disorder.


82.    DOC policies were endorsed by DOC Secretary Dennis "Denny" Kaemingk or his

successor, Mike Leidholt.


83.    Plaintiff Jason Hansen has exhausted all available administrative remedies on the claims

presented herein pursuant to DOC Policy 1.3.E.2 Administrative Remedy for Inmates.


84.    All handwritten notes appearing on the exhibits are written by Jason Hansen or written

by others prior to receipt and intended to be a part of the exhibit.

CLAIMS

85.    Claim 1:  Defendants Badure, VanMeveren, Hawk, Wynia, Leslie, Ellis, Ekeren, Young,

Eilers, Christensen, Dooley, Fluke, Bowers, Nelson, Turbak, Thelen, England, and Wolfgang,

under color of law, in their official and individual capacities, did deny or allow to be denied

appropriate and diagnosed gender notification upon Plaintiff's permanent records, psycholog-

ical counseling, necessary therapies and treatments, female appropriate clothing, hygiene and

other items allowed females confined to other DOC facilities, and gender changing surgery,

which amount to denials of Plaintiff's rights to freedom of expression, to be free from cruel and

unusual punishment by deliberate indifference to her serious medical needs, and equal

protection of the laws as guaranteed by the First, Eighth, and Fourteenth Amendments to the

Constitution of the United States.


86.    Claim 2:  Defendants Eilers, Christensen, Kaemingk, and Leidholt, under color of law, in

their official and individual capacities, authorized or allowed the use of an ambiguous and too

vague Prohibited Act, "V-16 Conduct which disrupts or interferes with the security or good

order of the institution; interfering with a staff member in the performance of his or her duties

(quoting DRs of 10/29/17 and 01/17/18, Exs. 5a & 6) as applied and on its face, denied Plaintiff's

rights to freedom of expression, to be free from cruel and unusual punishment due process and

equal protection of the laws as guaranteed by the First, Eighth, and Fourteenth Amendments to

the Constitution of the United States.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Jason/Jenna Hansen respectfully requests this Court grant to her the following relief:

A.      Issue declaratory judgments proclaiming the challenged acts and omissions of Defendants, as alleged above, were unconstitutional.

B.      Issue injunctions requiring Defendants allow or provide Plaintiff:

      1.      Makeup and other beauty-enhancing products, and appropriate "ladies" hygiene items, as allowed other female prisoners at DOC facilities;

      2.      sports bras;

      3.      boxer briefs, so as to inhibit the movement of Plaintiff's "ghost limb";

      4.      body hair removal;

      5.      head hair growth hormones;

      6.      estrogen enhancers;

      7.      testosterone blockers;

      8.      private strip searches and showers, including those conducted while Plaintiff is confined within SHU;

      9.      gender-changing surgery;

      10.     name change; and

      11.     counseling.

C.   Award the following damages:

    1.   $500,000.00 compensatory, general damages; and

    2.   $200,000.00 punitive damages.

D.   Issue and order requiring Defendants to reimburse Plaintiff for all costs and fees incurred

and pay the Court all costs and fees due from Plaintiff in this matter.

E.   Grant such other relief as this Court deems just and fair.

## IN CONCLUSION

For all of the foregoing stated reasons, Plaintiff seeks the relief requested.

## VERIFICATION and CERTIFICATION

I, Jason/Jenna Hansen, Plaintiff proceeding pro se, hereby verify and certify under penalty of perjury that the foregoing facts are true and correct, and that on this date I provided the original of this Amended Complaint within an envelope addressed to the Clerk of this Court to my unit staff designate for mailing by SDSP legal mail.

Executed on this       day of June, 2019.

*Jason L. Hansen*

```
Jason/Jenna Hansen #12538
P.O. Box 5911
Sioux Falls, SD
57117-5911
```

23